United States District Court
District of Massachusetts

|  |  |
|---|---|
| Chr. Hansen HMO GmbH, <br><br> Plaintiff and Counterclaim-Defendant, <br><br> v. <br><br> Glycosyn LLC, <br><br> Defendant and Counterclaim-Plaintiff, <br><br> v. <br><br> Abbott Laboratories, <br><br> Third-Party Defendant. | Civil Action No. 22-11090-NMG |

**MEMORANDUM & ORDER**

**GORTON, J.**

This case arises out of patent infringement claims by Glycosyn LLC ("Glycosyn") against Chr. Hansen HMO GmbH ("Chr. Hansen") relating to Chr. Hansen's methods of manufacturing a human milk sugar called 2'-fucosyllactose ("2'-FL") which was an ingredient in certain infant formulas sold by Abbott Laboratories ("Abbott"). Chr. Hansen seeks a declaratory judgment that its manufacturing methods do not infringe Glycosyn's U.S. Patent No. 9,970,018 ("the '018 patent") and that furthermore that patent is invalid.

- 1 -

Before this Court is a motion of third-party defendant Abbott to sever and stay the case pending resolution of the patent infringement claim against the manufacturer.

## I. Parties

### A. Chr. Hansen

Plaintiff and counter defendant Chr. Hansen is a private German limited liability company, formerly known as Jennewein Biotechnologie GmbH ("Jennewein").[1]  As alleged in the complaint, Jennewein was the first entity to develop a commercially successful process for making 2'-FL and to obtain regulatory approval from the U.S. Food and Drug Administration ("FDA") for 2'-FL made by fermentative production using a genetically engineered E. coli.

### B. Glycosyn

Dr. David Newburg pioneered the field of human milk oligosaccharides ("HMOs") in the 1980s.  He discovered that oligosaccharides, otherwise known as small sugars, found in human milk have useful biological functions and focused his research on 2'-FL.  In 2002, Dr. Newburg and his brother Howard

---

[1] Jennewein was acquired by Chr. Hansen HMO GmbH in 2020 and for purposes of this Memorandum and Order, "Chr. Hansen" refers to both Chr. Hansen and its predecessor, Jennewein.

founded Glycosyn, the defendant and third-party plaintiff, to continue his clinical work on HMOs.

With the goal of creating enough 2'-FL for use in Dr. Newburg's research, Glycosyn developed novel methods to genetically engineer E. coli bacterial strains that in turn produce large quantities of 2'-FL.  Glycosyn filed a patent application in 2011 to protect its invention, resulting in the '018 patent which is the subject matter of this declaratory judgment suit.

### C. Abbott

According to the pleadings, third-party defendant Abbott has partnered with both Glycosyn and Chr. Hansen at different times over the past 15 years.  Abbott entered into a confidentiality agreement with Glycosyn in 2009, followed by a development agreement in 2013.  Glycosyn alleges that it revealed its process for making 2'-FL to Abbott during that partnership.

In 2015, Abbott terminated its partnership with Glycosyn and began collaborating with Chr. Hansen.  Since 2016, Abbott has purchased 2'-FL from Chr. Hansen and sold substantial quantities of infant formula containing that 2'-FL between May, 2018 and May, 2020.

## II.  Procedural History

Glycosyn and Chr. Hansen have been embroiled in litigation for five years.  In March, 2018, Glycosyn filed suit against Chr. Hansen in the District of Massachusetts for patent infringement but that suit was stayed pending resolution of a parallel action that Glycosyn brought one month later before the International Trade Commission ("ITC"). Glycosyn LLC v. Jennewein Biotechnologie GmbH, No. 1:18-cv-10423-PBS, Dkt. 1, 13 (D. Mass. Mar. 5, 2018).  In May, 2020, the ITC issued a Limited Exclusion Order against Chr. Hansen after the administrative law judge ("ALJ") found that it infringed Glycosyn's '018 patent and the Federal Circuit affirmed that decision in September, 2021. Jennewein Biotechnologie GmbH v. Int'l Trade Comm'n, No. 2020-2220, 2021 WL 4250784, at *3 (Fed. Cir. 2021).

In June, 2022, Glycosyn voluntarily dismissed the 2018 District of Massachusetts suit and filed suit against Abbott in the Western District of Texas for infringement of the '018 patent. Glycosyn LLC, No. 1:18-cv-10423-PBS, Dkt. 19; Glycosyn LLC v. Abbott Laboratories, No. 6:22-cv-00619-ADA, Dkt. 1 (W.D. Tex. June 14, 2022).

Chr. Hansen filed the pending declaratory judgment action in this Court against Glycosyn in July, 2022, seeking declaratory judgment of non-infringement and invalidity of the

- 4 -

'018 patent. One month later, Glycosyn dismissed the Western District of Texas suit against Abbott, answered and counter-claimed against Chr. Hansen and cross-claimed against Abbott in the pending case. Glycosyn LLC, No. 6:22-cv-00619-ADA, Dkt. 4.

In response, Abbott moved to sever and stay the claim against it pending resolution of the cross claims between Glycosyn and the manufacturer, Chr. Hansen.

### III. Motion to Sever and Stay

#### A. Legal Standard

A district court has the discretion to "strike [a] third-party claim, to sever it, or to try it separately." Fed. R. Civ. P. 14(a)(4); see also Acevedo-Garcia v. Monroig, 351 F.3d 547, 558 (1st Cir. 2003) (stating that the decision to sever parties or claims "is a case management determination peculiarly within the discretion of the trial court" (internal quotation marks omitted) (quoting Gonzalez-Marin v. Equitable Life Assurance Soc'y, 845 F.2d 1140, 1145 (1st Cir. 1988))).

Courts customarily consider three factors in determining whether a stay is warranted in a patent case: 1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party, 2) whether a stay will simplify the issues and 3) the stage of the litigation, including whether discovery is complete and a trial date has been set. DiversiTech

Corp. v. RectorSeal, LLC, No. CV 20-11896-NMG, 2021 WL 2953324, at *2 (D. Mass. July 14, 2021) (citing ACQIS, LLC v. EMC Corp., 109 F. Supp. 3d 352, 356 (D. Mass. 2015)).  Courts are to consider the totality of the circumstances and, although prior decisions may help guide the inquiry, such a determination is largely case specific. Id.

According to the Federal Circuit, in a patent case, litigation brought against or commenced by

> the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer.

Katz v. Lear Siegler, Inc., 909 F.2d 1459, 1464 (Fed. Cir. 1990).  To permit such practice, courts have developed a "customer suit" exception to the general rule that favors the forum of the first-filed action. In re Trustees of Bos. Univ. Pat. Cases, No. CV 13-12327-PBS, 2014 WL 12576638, at *3 (D. Mass. May 16, 2014).  Courts consider three factors when determining whether the customer suit exception is applicable:

1) whether the Customers are merely resellers;

2) whether the Customers agree to be bound by any decision in the Manufacturer's case; and

3) whether the Manufacturer is the sole source of infringing products.

Id.  The customer suit exception is a "narrow exception" that strives to impose the burdens of trial on the "true defendant,"

- 6 -

the manufacturer, rather than the customer. In re Nintendo of America, Inc., 756 F.3d 1363, 1365 (Fed. Cir. 2014) (citing Codex Corp. v. Milgo Elec. Corp., 553 F.2d 735, 737–38 (1st Cir. 1977)); Spread Spectrum Screening LLC v. Eastman Kodak Co., 657 F.3d 1349, 1358 (Fed. Cir. 2011).

**B.   Application**

Relying on both the "customer suit exception" and traditional stay factors, Abbott avers that the Court should sever and stay the claim against it pending the resolution of the suit between Glycosyn and Chr. Hansen.

**1.   Customer Suit Exception**

The arguments of both parties dwell on the first factor, i.e. debating whether Abbott is simply the "end user" and Chr. Hansen, as manufacturer of 2'-FL, the true defendant. Abbott vehemently protests that it is a mere reseller of the 2'-FL that it bought from Chr. Hansen and neither manufactured nor modified the 2'-FL before incorporating it into its infant formula. It asserts that because Chr. Hansen's manufacturing process is accused in this case, Chr. Hansen is in a better position to defend it and is thus the "true defendant."

Glycosyn responds that Abbott "actively collaborates" with Chr. Hansen and possesses information relevant to Glycosyn's patent infringement allegations. Unlike a mere end user, Abbott

purportedly spent years developing methods of producing 2'-FL and compositions comprising of 2'-FL for its use in infant formula. Abbott also entered into partnerships with both Glycosyn and Chr. Hansen.

Abbott contends that the other two customer suit exception factors favor a stay as well because 1) Abbott agrees to be bound by the outcome of the claim against Chr. Hansen and 2) Chr. Hansen is the only source of the 2'-FL produced by the accused process during the relevant period.

The Court concludes that those factors are, however, outweighed by the first factor and the apparent partnership between Abbott and Chr. Hansen with respect to 2'-FL which indicates that Abbott is more than a mere "end user" of 2'-FL. Cf. Kahn v. Gen. Motors Corp., 889 F.2d 1078, 1081 (Fed. Cir. 1989) (applying the customer suit exception when a lawsuit was filed against a customer who was "simply a reseller of the accused goods").

Moreover, Glycosyn proffers a compelling argument that the customer suit exception does not apply to the facts of this case. Citing the Spread Spectrum decision of the Federal Circuit, Glycosyn explains that the customer suit exception

> typically arises when the first-filed case is an
> infringement action against a customer and the

- 8 -

> manufacturer subsequently files a declaratory judgment action against the patent holder in a different forum.

Id. Thus, when determining whether to stay a case in a different forum, "the guiding principles in the customer suit exception cases are efficiency and judicial economy." Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Texas Sys., 458 F.3d 1335, 1343 (Fed. Cir. 2006). Abbott, instead, erroneously relies upon appellate cases that give

> priority to supplier litigation over what already is or should be separate litigation with customers.

In re Dell Inc., 600 F. App'x 728, 730 (Fed. Cir. 2015) (citing In re Nintendo of America, Inc., 756 F.3d 1363; In re Google, Inc., 588 F. App'x 988 (Fed. Cir. 2014), both of which Abbott cited in support of its proposition). Indeed, both In re Nintendo and In re Google involved parallel cases that were proceeding against the manufacturer and independent customers in two entirely different districts.

In contrast, here the manufacturer (Chr. Hansen) and the customer (Abbott) are defendants with a history of collaboration in the same proceeding in the same forum. See In re Dell Inc., 600 F. App'x at 730 ("[W]e are aware of [no appellate court case] that sets forth the proposition that a district court must stay proceedings against a customer in the very same litigation that will, regardless of the requested stay, go forward against

the supplier."). The customer suit exception is inapplicable to the unique facts of this case and is not a ground for staying it. See Tegic Commc'ns Corp., 458 F.3d at 1343.

### 2. Traditional Stay Factors

Abbott also fails to prove that the traditional stay factors warrant a stay. With respect to the first factor, Abbott avers that Glycosyn will not be unduly prejudiced because 1) the stay would only be as to Abbott, allowing Glycosyn and Chr. Hansen to resolve their dispute, 2) there would be no material delay and 3) Glycosyn's "history of forum shopping" undermines any potential claim of prejudice.

Glycosyn responds that staying the case would confer third party status on Abbott and permit Chr. Hansen to gain a tactical advantage during discovery. The Court agrees.

In a previous, related proceeding before the ITC between Glycosyn and Chr. Hansen, Glycosyn evidently subpoenaed Abbott as a third party to produce certain relevant documents. When Abbott and Chr. Hansen refused to do so and Glycosyn moved to compel, Chief ALJ Charles E. Bullock found that the subject documents were relevant to Glycosyn's claims of infringement. Order No. 21, In re Certain Human Milk Oligosaccharides and Methods of Producing the Same, Inv. No. 337-TA-1120 (Dec. 6, 2018). Staying the claim against Abbott would again tend to

frustrate discovery and "present a clear tactical disadvantage" to Glycosyn. See DiversiTech Corp., 2021 WL 2953324, at *2.

Finally, with respect to the third factor, although this case is in its early stages, that alone does not compel a stay. In fact, the Court concludes that, in this case, for the sake of efficiency, the first two factors trump the third. See ADA Sols., Inc. v. Engineered Plastics, Inc., 826 F. Supp. 2d 348, 352 (D. Mass. 2011) (reasoning that although the motion to stay was filed early in the case, "a stay would not be prudent" in light of the other factors).

## ORDER

For the foregoing reasons, the motion of the third-party defendant, Abbott Laboratories, to sever and stay pending resolution of the claim against the manufacturer (Docket No. 30) is **DENIED**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated March 9, 2023